## CHAMBERS *v.* GARDNER.

In an action for the recovery of personal property, the controlling issue being whether or not the plaintiff was defrauded in an exchange of horses, it was error for the court, in charging the jury, to assume that the fraud had been established by the evidence, that being a question of fact for determination by the jury.

May 2, 1892. By two Justices.        *Judgment reversed.*

Fraud. Charge of court. Before Judge VAN EPPS. City court of Atlanta. September term, 1891.

Gardner sued Chambers for the recovery of a certain horse alleged to be of the value of $150, to which petitioner claimed title. The jury found for Gardner $150, the proved value of the horse, and $45 one month's hire, with costs. Defendant's motion for new trial was overruled, and he excepted. One of the grounds of the motion was, that the court erred in charging: "In this case the evidence is undisputed. You will therefore look into the evidence and ascertain the value of the horse at the time of the conversion, and. this amount you will find against the defendant, together with its reasonable hire from the date of the conversion; but inasmuch as the plaintiff has waived the hire, except as to one month, you will restrict it to that month, finding such a sum as will be reasonable for its hire during that time." It was alleged that this charge was error, because, the case sounding in tort, the court had no right to direct a verdict, and the statements in the charge were an expression by the court of an opinion on the evidence; the evidence introduced by plaintiff

was insufficient to authorize the court to direct a verdict; and the case made by plaintiff was not a case of trover as sued for, but was a case of breach of warranty, and the court should so have instructed the jury.

The plaintiff was the only witness.' He testified: He owned the horse sued for, which was afraid of the cars, and he wanted to trade him for a gentle one. Defendant came by his house early on the morning of May 12, 1890, driving a fine looking chestnut sorrel horse, and said he understood plaintiff had a horse to trade. Plaintiff told defendant that he had a horse that was very high strung and afraid of the cars, and would like to get a gentle horse, and defendant said his was gentle and would suit plaintiff. Plaintiff had him drive his horse up and down the street several times, and he seemed to move all right; and plaintiff said to him, he knew but little about horses, their diseases, and asked him if the horse was sound and all right, and he said he was. Plaintiff discovered something wrong with the horse's nose, and he said that was caused from slipping the halter. Plaintiff asked him $15 to boot; defendant said he could only swap even; plaintiff led the horse into his stable, and defendant drove off with plaintiff's horse. In about twenty minutes plaintiff went out to hitch up the sorrel horse, and found him so stiff he could hardly get him out of the stable. When put in there he had been driven until he was warmed up. After so long a time plaintiff got him hitched up and drove to where he saw defendant, and told him the horse was stiff and worthless and not sound, and then and there offered the horse back and demanded his (plaintiff's) horse of defendant. Defendant said a trade was a trade, and refused to let plaintiff have plaintiff's horse. The horse was unsound and diseased. Plaintiff carried the sorrel back home, and next day instituted this suit. In the meantime, on May 13th, the sorrel

horse was levied on under an execution against defendant (which with the entries upon it was introduced in evidence) and taken away, and plaintiff has never seen him since. Plaintiff's horse was worth $150, and was worth for hire $45 a month, and plaintiff was without a horse but a month.

MAYSON & HILL, by brief, for plaintiff in error.

R. J. JORDAN, by brief, *contra.*